RECEIVED
IN LAKE CHARLES, LA.

OCT 16 2012

TONY R. MOORE, CLERK
BY_____
                DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MARY NIXON | : | DOCKET NO. 2:12-CV-00308 |
| VS. | : | JUDGE MINALDI |
| ALICE MELINDA VAUGHN, born REEVES, FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, and CITGO PETROLEUM CORPORATIONS | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 10], filed by the defendants, CITGO Petroleum Corporation ("CITGO") and Fidelity Investments Institutional Operations Company, Inc. ("Fidelity"). The motion is opposed by the plaintiff, Mary Nixon [Doc. 14]. CITGO and Fidelity filed a Reply to the plaintiff's opposition [Doc. 15]. The undersigned finds that this court does not have subject matter jurisdiction over the instant case because the plaintiff's claims are not completely preempted under ERISA. Therefore, the defendant's motion is DENIED and the matter is REMANDED to state court.

### BACKGROUND

The plaintiff filed this action against her sister (Alice Melinda Vaughn, born Reeves), CITGO, and Fidelity, alleging that her sister fraudulently converted funds the plaintiff was entitled to as a beneficiary under a 401(k) from the CITGO Petroleum Corporation Employee

1

Retirement and Savings Plan.  Further, she alleged that CITGO and the plan administrator/record keeper, Fidelity, were negligent in failing to inform her of Ms. Vaughn's actions.[1]

The 401(k) originated with the plaintiff's father, Allen Reeves, who had accumulated it while working for CITGO.[2]  Allen Reeves had named the plaintiff's mother, Cherry Reeves, as sole beneficiary of his 401(k), and Cherry Reeves rolled the 401(k) into a new 401(k) plan when he died in 1995.[3]  Following that, Cherry Reeves named her daughters, the plaintiff and Ms. Vaughn, as beneficiaries under her new 401(k) plan.[4]  Cherry Reeves died on August 5, 2007, at which time her 401(k) passed to the plaintiff and Ms. Vaughn.[5]  Following this, and allegedly without the plaintiff's consent or knowledge, Ms. Vaughn opened a new 401(k) account in the plaintiff's name, using the funds from the plaintiff's share of the deceased Cherry Reeves's 401(k) to do so.[6]  Fidelity allegedly administered the account.[7]

According to the plaintiff, when making this transfer, Ms. Vaughn fraudulently listed the plaintiff's address as 607 Tulane Street, Lake Charles, Louisiana.[8] The plaintiff asserts that she has never resided at or received her mail at this address, and that in fact it is Ms. Vaughn's address instead.[9]  According to the plaintiff, even though Fidelity and CITGO were aware at all

---

[1] Compl. at ¶ 7.

[2] *Id.* at ¶ 4.

[3] *Id.* at ¶ 5.

[4] *Id.* at ¶ 6.

[5] *Id.*

[6] *Id.* at ¶ 7.

[7] *Id.*

[8] *Id.*

[9] *Id.* at ¶ 8.

times that it was Ms. Vaughn, and *not* the plaintiff, taking these actions in setting up the new 401(k) account in the plaintiff's name, they made no attempt to inform the plaintiff of this activity, or to contact her to verify that Ms. Vaughn had given them the right address.[10]

After setting up the alleged fraudulent 401(k) account, the plaintiff contends that Ms. Vaughn requested that Fidelity close out the account she set up in favor of the plaintiff and to issue a check to the plaintiff for the full amount in the 401(k).[11] Ms. Vaughn then requested that the check be sent to 607 Tulane Street.[12] Upon Ms. Vaughn's request, Fidelity issued two checks payable to the plaintiff, for a total amount of $17,496.18, which was the entire amount of the 401(k), less an amount withheld for federal income tax, and sent the check to Ms. Vaughn's address, 607 Tulane Street.[13]

Upon receipt of these checks at her home, Ms. Vaughn allegedly forged the plaintiff's signature on the checks without the plaintiff's permission or knowledge, and then deposited them in her personal account for her own use.[14] The plaintiff avers that she was never made aware by Ms. Vaughn, Fidelity, or CITGO that a request was made to liquidate the 401(k).[15] It was not until much later, after the plaintiff filed her 2008 tax return and the Internal Revenue Service

---

[10] *Id.* at ¶ 9.

[11] *Id.* at

[12] *Id.* at ¶ 10.

[13] *Id.* at ¶ 11.

[14] *Id.* at ¶ 12.

[15] *Id.* at ¶ 14.

3

assessed additional taxes, penalties, and interest against her for under-reporting and under paying federal income taxes, that the plaintiff caught on to Ms. Vaughn's fraudulent activity.[16]

The plaintiff contends that Ms. Vaughn's fraudulent actions and CITGO and Fidelity's negligence (in allowing the fraud to happen) entitle her to damages and attorney's fees.[17] She claims, as itemized damages, $17,496.18, the full amount of the 401(k) allegedly stolen from her by Ms. Vaughn.[18] She also requests compensation for taxes, penalties, and interest paid to the Internal Revenue Service as a result of Ms. Vaughn's unauthorized conversion and liquidation of her 401(k), damages for mental anguish and anxiety, and attorney's fees.[19]

The plaintiff originally filed her petition on December 7, 2011 in the 14th Judicial District Court in Calcasieu Parish.[20] The defendants timely removed the case to this court on the basis of federal question jurisdiction, alleging that the case arose under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*[21] Fidelity and CITGO now move to dismiss the plaintiff's claims against them under Rule 12(b)(6). The defendants make four arguments: first, that the plaintiff's 401(k) is governed by ERISA, and that ERISA preempts any and all state law causes of action she is bringing;[22] second, that they are not proper defendants under ERISA because they are not the plan or plan administrators and did not have discretionary

---

[16] *Id.* at ¶ 15.

[17] *Id.* at ¶ 16.

[18] *Id.* at ¶ 17.

[19] *Id.*

[20] *See id.* at pg. 1.

[21] Not. of Removal

[22] Def.s' Mem. in Support of Mot. to Dismiss, [Doc. 10-1], pg. 12-14.

authority over the plan;[23] third, that the plaintiff's petition should be dismissed because she has not exhausted the administrative remedy requirement, and instead "marched directly into court;"[24] and, fourth, that the plaintiff's claims are time barred, since the 401(k) plan provided for a two year statute of limitations, and she brought her claims more than two years after the alleged violations happened.[25]

In the plaintiff's Opposition to the Motion to Dismiss, she argues first that ERISA does not preempt her state law remedies, because ERISA preemption only applies in cases that deal with the payout of benefits, and not in this situation, where she is alleging that Fidelity and CITGO were negligent in not telling her she was a beneficiary to the 401(k), in not calling to confirm her address, and in letting Ms. Vaughn liquidate the 401(k);[26] second, that Fidelity and CITGO are proper defendants, because she has pled sufficient facts to establish that they had discretionary control over the 401(k) plan;[27] third, that the exhaustion of administrative remedies provision should not apply to her, because:(1) she never knew about the 401(k) and thus could not know about the administrative remedy requirement and (2) her claim is for breach of fiduciary duty, which has no remedy exhaustion requirement;[28] fourth, she says that her claims are not time-barred, because she had no way of knowing about Ms. Vaughn's actions until 2011 when the Internal Revenue Service penalized her for not paying taxes upon the liquidation of the

---

[23]*Id.*, pg. 14-15

[24]*Id.*, pg. 15-17

[25]*Id.*, pg. 17-18

[26]Pl.'s Opposition to Mot. to Dismiss, [Doc. 14-1], pg. 9-10.

[27]*Id.*, pg. 10-12.

[28]*Id.*, pg. 12-13.

401(k), and thus her statute of limitations should run from 2011.[29] The plaintiff additionally argues that by attaching exhibits to their Motion to Dismiss, the defendants are unfairly attempting to convert the 12(b)(6) to a Motion for Summary Judgment.[30] She asserts that the 401(k) plan document attached to the defendants' motion is not central to her case, and therefore is not an appropriate document to consider in a 12(b)(6) Motion. But, if the undersigned must consider it, she requests that it should be treated as a Motion for Summary Judgment, and all parties should be allowed to present material relevant to the motion.[31]

In the defendants' Reply, they argue that the 401(k) plan excerpts attached to their Motion to Dismiss should be considered because the 401(k) plan is central to the plaintiff's claims, and in fact her complaint repeatedly references it.[32] The defendants then reassert their four arguments originally made in their Motion.[33]

## LEGAL STANDARDS

### I. MOTION TO DISMISS UNDER RULE 12(B)(6)

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. FED. R. CIV. P. 12(b)(6). When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp.2d 383, 388 (E.D. La. 2006).

---

[29] *Id.*, pg. 13-14.

[30] *Id.*, pg. 8.

[31] *Id.*

[32] Def.s' Reply Mem. In Support of Mot. To Dismiss, [Doc. 15], pg. 6-8.

[33] *See generally id.*

6

To avoid dismissal under a Rule 12(b)(6) motion, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. Accordingly, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

### II. *SUA SPONTE* DETERMINATION OF SUBJECT MATTER JURISDICTION

Federal courts exercise limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Although the question of subject matter jurisdiction is not before the court on a motion to dismiss, a district court has "a duty to establish subject matter jurisdiction over the removed action *sua sponte*, whether the parties raised the issue or not." See *United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 967 (9th Cir. 2004). "If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## LEGAL ANALYSIS

### I. ERISA's Complete Preemption Standard

District Courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim arises under federal law if it satisfies the "well-pleaded complaint" rule, which requires that a federal question must appear on the face of the complaint. *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 10-11 (1983). Here, the plaintiff has alleged state law fraud and

negligence causes of action, and thus no federal claim appears on the face of her complaint.[34] There is an exception, however, to the well-pleaded complaint rule: "when a federal statute wholly displaces the state-law cause of action." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 207 (2005). ERISA is such a statute. *Id.*

There are two forms of ERISA preemption. First, in complete preemption, any state cause of action that seeks the same relief as a cause of action authorized by ERISA's civil enforcement section, § 502, "regardless of how artfully pleaded as a state action," is completely preempted. *Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 337 (1999); *see also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66 (1987). Thus, state claims are completely preempted if they fall within the scope of § 502, which authorizes participants or beneficiaries to file civil actions to recover benefits, enforce rights conferred by an ERISA plan, remedy breaches of fiduciary duties, clarify rights to future benefits, and enjoin violations of ERISA. 29 U.S.C. § 1132; *McGowin v. ManPower Int'l, Inc.* 363 F.3d 556, 559 (5th Cir. 2004) (holding that "complete preemption exists when a remedy falls within the scope of or is in direct conflict with [ERISA's civil enforcement section]."). If complete preemption exists, therefore, a plaintiff's state claims are subject to removal under federal question jurisdiction, and ERISA offers the sole framework for relief. If complete preemption does not exist, however, then the reviewing federal court must remand the case to state court.

The second form of ERISA preemption, known as "conflict" preemption, exists when a state law claim falls outside of the scope of § 502's civil enforcement provision, but still "relates to" the plan under § 514. 29 U.S.C. § 1144(a) (ERISA provisions ". . . shall supersede any and

---

[34]*See* Pl.'s Compl.

all state laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan. . ."); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). The presence of conflict preemption does not establish federal question jurisdiction like complete preemption under § 502 (in which a state cause of action is transformed into a federal one), rather, its serves as a defense to a state action. *Giles*, 172 F.3d at 337. When the doctrine of complete preemption does not apply, but the plaintiff's claim is still arguably preempted under § 514(a), the district court, being without removal jurisdiction, must remand to the state court where the preemption issue can be addressed and resolved. *Id.* The undersigned notes, however, that the Fifth Circuit has held that "[t]he set of claims described in § 502(a) [and complete preemption] will rarely, if ever, differ from the set of claims that 'relate to' an ERISA plan under § 514(a)." *Gulf Coast*, 562 F.Supp. 2d 760, 767 (E.D. La. 2008) (quoting *Woods v. Texas Aggregates, LLC*, 459 F.3d 600, 603 (5th Cir. 2006)).

The defendants argue that complete preemption applies in this case. The Fifth Circuit has never set out a definitive test for when complete preemption under § 502 applies, but has set forth a test for when state laws "relate to" the plan under § 514(a), assessing: (1) whether the claim addresses an area of exclusive federal concern (such as the right to receive benefits under an ERISA plan) and (2) whether the claim directly affects the relationship among traditional entities: the plan and its fiduciaries, the employer, beneficiaries, and participants. *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 945 (5th Cir. 1994) (citations omitted). Related to this, the Fifth Circuit also has found important whether the state law claims are "bound up with interpretation and administration of the ERISA plan." *Id.* at 947.

Despite ERISA's broad preemption, its reach is not "limitless." *Rozzell v. Security Servs.*, 38 F.3d 819, 822 (5th Cir. 1994) (citations omitted). There are state law claims that are ".

9

. . too tenuous, remote, or peripheral. . .to warrant a finding that the [state] law relates to the plan." *Shaw*, 463 U.S. at 100 n. 21. Courts have disagreed on whether ERISA preempts claims which rest on a defendant negligently paying out benefits based on fraudulent information. *See See Chidester v. Quoyster*, 41 F.3d 664 (5th Cir. 1994) (holding that ERISA preemption applied to a case where an employer forged an insurance cancellation form because the cause of action involved the principal ERISA entities and because the plaintiff's claims "related to" the ERISA plan); *Dunlap v. Ormet Corp.*, Case No. 5:08CV65, 2009 U.S. Dist. LEXIS 22346 (N.D. W. Va., Mar. 19, 2009) (holding that ERISA completely preempted a state negligence cause of action against the defendant insurance company who negligently accepted a fraudulent change of beneficiary form without assessing its validity); *but see Poindexter v. Miller*, No. 1:09-cv-107-SJM, 2010 U.S. Dist. LEXIS 24175 (W.D. Pa. Mar. 16, 2010) (holding that ERISA did not completely preempt state negligence cause of action against a defendant who negligently processed and accepted a falsified consent form).

## II. ERISA Complete Preemption does not Apply to Plaintiff's Claims

Turning to the facts in the instant case, the plaintiff seeks the amount of 401(k) funds belonging to her that were allegedly fraudulently converted by Ms. Vaughn, plus consequential damages: reimbursement for tax penalties that resulted from the conversion, and damages for mental anguish.[35] The plaintiff acknowledges in her Opposition Memorandum and her petition that the Plan is governed by ERISA,[36] she and Ms. Vaughn were co-beneficiaries of Cherry

---

[35]Pl.'s Compl. at ¶ 18.

[36][Doc. 14-1], pg. 9.

10

Reeves's 401(k) plan,[37] CITGO is the plan sponsor,[38] and Fidelity was an administrator of the plan.[39] As noted above, in ascertaining whether ERISA preemption applies, the roles of the parties are important, and preemption is much more likely if both the plaintiff and the defendant are ERISA entities. *See Gulf Coast*, 562 F.Supp. 2d at 768. The plaintiff still avers that ERISA does not preempt her claims because her cause of action against the defendants rests on the fact that they never warned the plaintiff that Ms. Vaughn had created a 401(k) in Ms. Nixon's name, never verified her mailing address, and never sent confirmation that the 401(k) had been liquidated.[40] Essentially, she has a fraud claim against a co-beneficiary and a failure to inform claim against CITGO and Fidelity.

Assuming all facts pled in her complaint to be true, even if the parties are ERISA entities, and even if the amount of money being fought over came from an ERISA plan, the undersigned remains unconvinced that this cause of action falls squarely within the parameters of ERISA's civil enforcement provisions and complete preemption. As discussed *supra*, the plaintiff's main contention in her complaint is that CITGO and Fidelity, as pawns in a co-beneficiary's fraudulent scheme, failed to disclose information to the plaintiff which could have put her on alert that her money was at risk. CITGO and Fidelity come in as secondary negligent actors who the plaintiff alleges could have done more to prevent the main cause of the plaintiff's injuries: the alleged fraudulent activity of Ms. Vaughn.

Turning to her possible remedies under ERISA, none seem to fit this cause of action.

---

[37]Pl.'s Compl. at ¶ 6.

[38][Doc. 14-1], pg. 2.

[39]Pl.'s Comp. at ¶ 1; [Doc. 14-1}, pg. 2.

[40][Doc. 14-1], pg. 9.

11

First, a straightforward claim for benefits under § 502(a)(1)(B) would not afford the plaintiff the relief she is requesting on the face of her complaint. Section 502(a)(1)(B) allows a plaintiff-beneficiary to enforce personal rights under the plan by recovering benefits due, obtaining declaratory judgment to entitlement to benefits under the plan document, or enjoining the administrator from improperly refusing to pay benefits. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). Here, there is no issue on whether the defendants did or did not pay out benefits that were due to the plaintiff: indeed, as per her complaint, they *did* pay out benefits to the plaintiff by cutting her two checks for the full amount she was entitled to.[41] The problem arose in that they sent it to Ms. Vaughn's address instead of the plaintiff's address.

While not argued by either party, at first blush, a breach of fiduciary duties under § 502(a)(2) would seem to be a more appropriate channel of relief. Typically, a plaintiff may only pursue a § 502(a)(2) claim if he is asserting an injury to the plan "as a whole." *Russell*, 473 U.S. at 140. However, in a recent Supreme Court case, *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008), Justice Stevens held that an individual ERISA plan beneficiary could maintain an action for breach of fiduciary duties under § 502(a)(2), as long as the plan in question was a defined contribution plan.[42] *Id.* at 255. While a 401(k) like the plaintiff's falls squarely within the definition of a defined contribution plan, § 502(a)(2) is not designed to correct breaches like the one mentioned here, rather, to correct fiduciary breaches as they relate to

---

[41] The defendants cannot take back and redistribute to Ms. Nixon what has already been converted: Ms. Vaughn, presumably right after receiving the checks, forged Ms. Nixon's name and then deposited the money in her personal bank account. Additionally, it is even clearer that the plaintiff could not pursue a claim for benefits against Ms. Vaughn, as § 502(a)(1)(B) only applies to claims against the plan or plan administrators/sponsors who exert discretionary control over the plan. *Muscemi v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349 (5th Cir. 2003). Ms. Vaughn clearly does not fall into this category.

[42] Unlike a defined benefit plan, in which the benefit amount remains fixed, in a defined contribution plan, an employer and an employee pay a fixed contribution into the employee's individual account, the contributions are then invested, and then the returns on the investment are credited to the individual employee's account.

12

imprudent investment decisions that diminish the value of the ERISA plan. *Id.* at 253 (Section 502(a)(2) allows beneficiaries to recover "for violations of the obligations defined in ERISA § 409(a)[, the principal statutory duties of which] relate to the proper management, administration, and investment of fund assets."). Looking at the face of the plaintiff's complaint, there is nothing here to indicate a breach of fiduciary duty via imprudent investment choices. Thus, §502(a)(2) is inapplicable.

Next, the court addresses the plaintiff's argument that, to the extent she seeks relief under ERISA, she is seeking relief under §502(a)(3). Under § 502(a)(3), a beneficiary may "enjoin any practice which violates any provision of this subchapter or the terms of the plan" or "obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). The Supreme Court has held that § 502(a)(3) allows lawsuits for individualized equitable relief for breach of fiduciary obligations, and that indeed § 502(a)(3) acts as a "catchall" provision, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Additionally, a plaintiff may bring a § 502(a)(3) claim only if her claims cannot be satisfied by a straightforward claim for benefits under § 502(a)(1)(B). *Metropolitan Life Ins. Co. v. Palmer*, 238 F.Supp. 2d 831, 835 (E.D. Tex. 2002).

The Supreme Court has held that § 502(a)(3) only allows for equitable relief, and that most claims for money damages will be considered "legal damages" falling outside the ambit of § 502(a)(3). *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) (holding that suit for monetary damages against a nonfiduciary that participated in the plan fiduciary's breach of duty were legal damages unavailable under § 502(a)(3)). Additionally, the Supreme Court has set out the crucial distinction between equitable relief allowed under § 502(a)(3) and legal relief: equitable restitution seeks only to restore to the plaintiff particular funds or property in the defendant's

13

possession, while legal restitution imposes personal liability for breach of a legal duty. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002).

Finally, the Supreme Court has found that the important distinction between legal and equitable remedies in restitutionary ERISA actions is whether the defendant has possession or control of the disputed res. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 342 (2006). In suits where the plaintiff seeks recovery of funds of which the defendant has maintained control and possession, this cause of action sounds in equity because the plaintiff is simply asking for the return of something the defendant wrongfully has. *See id.* The Fifth Circuit has adopted this standard, holding that "[a] defendant's possession of the disputed res is central to the notion of a restitutionary remedy, which was conceived not to assuage a plaintiff's loss, *but to eliminate a defendant's gain*." *See Amschwand v. Spherion Corp.*, 505 F.3d 342, 348 (5th Cir. 2007) (emphasis added).

The undersigned finds that the defendants are correct in arguing that the plaintiff is seeking legal damages, and not equitable damages, to cure the alleged breach of fiduciary duties on the part of CITGO and Fidelity. As discussed *supra*, the gravamen of the plaintiff's claims in her complaint against CITGO and Fidelity is that they were negligent in not telling Ms. Nixon that she was a beneficiary to the 401(k) and in allowing Ms. Vaughn to liquidate it. As such, her cause of action against the defendants sounds in legal damages, and not equity under § 502(a)(3), because her claim is to assuage her loss as a result of their negligence, and not to eliminate the defendants' gain of ill-gotten proceeds. Further, the defendants no longer have possession of the disputed res (as it is now presumably in Ms. Vaughn's possession), so there is no possibility of an equitable "taking back" of the funds from these two defendants. Additionally, while ERISA's remedies are broad, the undersigned finds it doubtful that § 502(a)(3)'s equitable relief was

14

intended to apply against Ms. Vaughn personally. While she was indeed a co-beneficiary to the late Cherry Reeves's 401(k) with the plaintiff, ERISA's fiduciary duties are meant to flow between plan administrators/sponsors and participants/beneficiaries, *not* between a co-beneficiary and another co-beneficiary of a 401(k).

Finally, the undersigned will discuss an argument not addressed by either party: whether the plaintiff's claims could feasibly be pled under § 502(c), which deals with a plan administrator's duty to report and disclose plan information. Briefly, § 502(c) penalizes plan administrators who fail to supply plan information to participants and beneficiaries. 28 U.S.C. § 1132(c). Typically, a § 502(c) suit will arise because a plan participant or beneficiary has requested plan information which the plan administrator fails to furnish. As one district court in this circuit aptly put it,

> [there are] very few cases in which the Fifth Circuit has addressed a fiduciary duty to disclose, and then only in narrow circumstances, the Fifth Circuit appears to impose such a duty cautiously. . . Like many courts, it views the plan administrator as having a fiduciary duty to plan participants as a whole, but not to individual participants with particular problems who do not make a specific request for information.

*In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F.Supp. 2d 511, 558 (S.D. Tex., 2003).

Other Fifth Circuit cases support the premise that the disclosure requirement of § 502(c) is meant to protect the plan as a whole, as opposed to being a micro-managing housekeeping measure meant to apply each time a plan administrator fails to send plan documents. For example, in *Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294 (5th Cir. 1995), a Wal-Mart employee sued Wal-Mart after it inadvertently failed to inform him that his COBRA coverage had lapsed upon his failure to pay his monthly premium. *Id.* at 1299, The Fifth Circuit reasoned that it would "ignore the realities of the situation" to assume that a gigantic employer like Wal-Mart

15

could possibly discern, absent an inquiry from the plaintiff, that he did not want his COBRA coverage, and thus there was no affirmative duty on the part of Wal-mart to inform the plaintiff. *Id.* In summation, the Fifth Circuit held that a plan administrator did not have a duty to "give personalized attention to each and every employee." *Id.* In another § 502(c) case, *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234 (5th Cir 1995), the Fifth Circuit noted ERISA's § 404(a) "imposes on a fiduciary the duty of undivided loyalty to plan participants and beneficiaries, as well as a duty to exercise care, skill, prudence and diligence. An obvious component of those responsibilities is the duty to disclose material information." *Id.* at 237. Notably, however, the Fifth Circuit was addressing a duty to disclose a change in rate schedule that affected the entire plan *as a whole*, and not instead a change to an individual's plan. *See id.*

On the face of the complaint, the plaintiff is not alleging that Fidelity and CITGO refused to, upon her request, provide her with plan information after Ms. Vaughn opened up her 401(k) account. Nor does she allege that the plan as a whole was compromised because of a failure to disclose material information. Instead, she is alleging that after Ms. Vaughn opened up the 401(k) in her name, Fidelity and CITGO did not go the extra mile to check in and let her know what her sister had just done. Most likely, CITGO and Fidelity did send the plaintiff information on her new 401(k), but she likely never received it because Ms. Vaughn gave them the wrong address. The undersigned will not read into § 502(c) that there is an affirmative duty to check with a beneficiary each time a change is made to their plans or double-check on whether an address is correct. As such, these claims are nothing more than garden-variety negligence claims falling outside of § 502's remedial scheme, and thus ERISA complete preemption does not apply. While it is possible that the plaintiff's claims still "relate to" the plan under § 514(a)'s conflict preemption, "when the doctrine of complete preemption does not apply, but the plaintiff's state

16

claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3rd Cir. 1995). As such, even if conflict preemption does apply, the undersigned is statutorily required to remand the case to state court where the preemption issue can be addressed.[43]

## CONCLUSION

The undersigned cannot contort the civil enforcement provisions of § 502 to fit the plaintiff's fraud and negligence claims as they appear on the face of her complaint. As the undersigned finds that the plaintiff's claims are not completely preempted by ERISA, this court lacks removal jurisdiction over the plaintiff's claims, and it is statutorily required to remand the case to state court inasmuch as the parties are not completely diverse and there is no other apparent basis upon which to assert federal subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). Therefore, the above-captioned case is dismissed for lack of subject matter jurisdiction and remanded to the 14th Judicial District Court in Calcasieu Parish.

**Lake Charles, Louisiana, this** \_\_\_ **day of** _____, 2012.

PATRICIA MINALDI
**UNITED STATES DISTRICT JUDGE**

---

[43] As the court must remand this case to state court, it will not address the defendants' remaining arguments on whether they are proper defendants under § 502(a)(1)(B), whether the plaintiff exhausted administrative remedies, and whether the statute of limitations has passed.

17